IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ADVANCED CONCRETE TOOLS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 3:10-cv-01139 |
| | ) | JUDGE HAYNES |
| HERMAN W. BEACH and | ) | |
| MANOWN ENGINEERING CO., INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

Plaintiff, Advanced Concrete Tools, Inc., originally filed this action in the Chancery Court of Sumner County, Tennessee, against the Defendants: Herman W. Beach and Manown Engineering Co., Inc., asserting a breach of contract claim. Plaintiff's claim arises from the Defendants' failure to pay the balance of the purchase price under the terms of the asset purchase agreement ("APA"). The Defendants removed the action to this Court under 28 U.S.C. § 1332(a)(1), the federal diversity statute, without objection. The parties proceeded with discovery of their claims.

Before the Court is Defendants' motion for partial summary judgment (Docket Entry No. 40) contending, in sum, that in the event Defendants are determined to be in breach of the APA, the maximum amount of damages Plaintiff is entitled to recover is $16,958.69, the amount of gross profits generated from the sale of the assets. In response (Docket Entry No. 45), Plaintiff argues that the measure of damages is $500,000, the balance Plaintiff is owed under the agreement.

1

For the reasons set forth below, the Court concludes that the Defendant's motion for partial summary judgment should be denied because the undisputed facts establish that Defendants breached the APA and that Plaintiff is entitled to damages in the amount of $500,000 and an award of prejudgment interest.

### A. Findings of Fact[1]

On or about June 5, 2007, Defendants entered into an Asset Purchase Agreement (the "APA") with Plaintiff. (Docket Entry No. 44, Plaintiff's Response to Defendants' Statement of Material Facts at ¶ 1). Under the APA, Defendants purchased certain assets from Plaintiff, including certain tools, dies, equipment, and Plaintiff's goodwill and customer lists. Id. at ¶ 2. The purchase price for this acquisition was $1,100,000. Id. at ¶ 3. On July 10, 2007, the APA was amended to change the allocation of the $1,100,000 to Plaintiff as follows:

(i) $600,000 cash payable upon completion of the sale of assets hereunder on the following schedule:

    a. $290,000.00 on the date of closing.
    b. $10,000.00 escrow deposit.
    c. $200,000.00 within 60 days following the date of closing together with interest thereon at the rate of six percent (6%) per annum.
    d. $100,000.00 within 90 days following the date of closing together with interest thereon at the rate of six percent (6%) per annum.

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Based upon the responses to Defendants' undisputed statement of material facts, the Court concludes that there are not any material factual disputes. Thus, this section constitutes finding of facts under Fed. R. Civ. P. 56(d).

(ii) Plus quarterly payment equal to 2% of gross sales of screeds, screed bars, saddle clamps, concrete bomb, and other screed related products sold by Advanced Concrete Tools Inc. at the time of closing of this transaction until seller has been paid $500,000. Such payments will begin fifteen months after completion of the sale hereunder.

(Docket Entry No. 40-3, Exhibit B, Amendment to Asset Purchase Agreement). The asset sale was closed on July 10, 2007. (Docket Entry No. 44, at ¶ 4).

Defendants paid Plaintiff the $600,000 that was due under the APA within 90 days from the date of closing. Id. at ¶ 5. The payment period for the remaining $500,000 of the purchase price began in October 2008. Id. at ¶ 7(B). Defendants did not pay the $500,000 due after the initial 90 day period. Id. at ¶ 5. Defendants contend that after the closing, they discovered problems with the assets that affected the gross sales of the products purchased under the APA. (Docket Entry No. 40-1, Defendants' Statement of Facts at ¶¶ 6-7). Plaintiff disputes[2] this contention and asserts that there were not any problems with the assets purchased and that the Defendants accepted the assets in their known condition at the time of closing. (Docket Entry No. 44, at ¶ 7(A) citing Docket Entry No. 44-1, Affidavit of Kim Frazier at ¶¶ 3, 4, 5; Docket Entry No. 44-2, Deposition of Herman Beach at 48-49; and Docket Entry No. 44-3, Deposition of Darwin Gilmore at 28-29).

## B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover,

---

[2] The Court concludes that this is not a material factual dispute as it does not go to the amount of damages and Defendants concede that they failed to pay the $500,000.

3

"district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional

4

discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then `must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must `present affirmative evidence in order to defeat a properly

5

supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict --

6

> "whether there is [evidence] upon which a jury can properly proceed to find a
> verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> In ruling on [a] motion for summary judgment, the court must construe the
> evidence in its most favorable light in favor of the party opposing the motion and
> against the movant. Further, the papers supporting the movant are closely
> scrutinized, whereas the opponent's are indulgently treated. It has been stated
> that: 'The purpose of the hearing on the motion for such a judgment is not to
> resolve factual issues. It is to determine whether there is any genuine issue of
> material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the
> nonmoving party relies, nor is it obligated to wade through and search the entire
> record for some specific facts that might support the nonmoving party's claim.
> Rule 56 contemplates a limited marshalling of evidence by the nonmoving party
> sufficient to establish a genuine issue of material fact for trial. This marshalling
> of evidence, however, does not require the nonmoving party to "designate" facts
> by citing specific page numbers. Designate means simply "to point out the
> location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough
> specificity that the district court can readily identify the facts upon which the
> nonmoving party relies; but that need for specificity must be balanced against a
> party's need to be fairly apprised of how much specificity the district court

> requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
>
> 6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

As a diversity action, state law governs the parties' claims and defenses. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 73 (1938). Breach of contract claims present questions of law that can be resolved on summary judgment. Guiliano v. Cleo, Inc., 995 S.W.2d 88, 95 (Tenn. 1999); Doe v. HCA Health Servs. of Tenn., Inc., 46 S.W.3d 191, 196 (Tenn. 2001). Under Tennessee law, for a breach of contract claim, Plaintiff must prove "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages

caused by the breach of contract." BancorpSouth Bank, Inc. v. Hatchel, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006)(citation omitted).

The "cardinal rule of contract interpretation" under Tennessee law is to ascertain the parties' intent based upon the language in the contract. Guiliano, 995 S.W.2d at 100 n.12. In the absence of fraud or mistake, an unambiguous written contract must be interpreted and enforced according to its plain terms. See FDIC v. Armstrong, 784 F.2d 741, 744 (6th Cir. 1986)(applying Tennessee law); Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bds., 690 S.W.2d 231, 237 (Tenn. 1985); Bob Pearsall Motors v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578, 580 (Tenn. 1975); Petty v. Sloan, 277 S.W.2d 355, 361 (Tenn. 1955); see also Tenn. Code Ann. § 47-50-112(a) ("All contracts . . . in writing and signed by the party to be bound . . . shall be prima facie evidence that the contract contains the true intention of the parties, and shall be enforced as written . . . .").

A contract is ambiguous only if its meaning is unclear and the contract language may be understood in more ways than one. Empress Health and Beauty Spa, Inc. v. Turner, 503 S.W.2d 188, 190-91 (Tenn. 1973). Moreover, neither a party to the contract nor the court may place a strained construction on the language of a contract to find ambiguity where none exists. Farmers-Peoples Bank v. Clemmer, 519 S.W.2d 801, 805 (Tenn. 1975). "If the contract is found to be ambiguous," the Court then applies "established rules of construction to determine the intent of the parties." Kafozi v. Windward Cove, LLC, 184 S.W.3d 693, 699 (Tenn. Ct. App. 2005).

Here, Defendants contend that if the Court were to determine that Defendants breached the APA and are without a defense, the maximum amount due under the APA is $16,958.69 that

10

represents two percent of the total revenue subject to the APA from October 2008 through 2011. Defendants also argue that Plaintiff is not entitled to the entire $500,000 due under the contract because the APA does not contain an acceleration clause and Defendants are not obligated to continue to manufacture or sell the assets it acquired from Plaintiff. In response, Plaintiff asserts that the APA was an "entire" contract, not a severable contract, and that this action encompasses the full amount due under the APA.

As to the absence of an acceleration provision, in a contract that provides for payment in installments, a plaintiff may bring an action for total breach against "one who has an unconditional obligation to make installment payments." Talkington v. Anchor Gasoline Corp., 821 F.Supp. 505, 515-16 (M.D. Tenn. 1993) ("[P]laintiff would in fact be prejudiced by having to resort to judicial process to enforce each payment."). Here, Plaintiff conveyed its assets to Defendants in return for $1,100,000. Defendants' obligation to make payments does not depend upon a condition Plaintiff must satisfy and the APA does not require any further action on the part of Plaintiff. Thus, the Court concludes that Defendants' obligation to pay was unconditional and Plaintiff properly brought this action against Defendants for total breach. See Hogan v. Coyne Intern. Enterprises Corp., 996 S.W.2d 195, 201 (Tenn. Ct. App. 1998) (reasoning that the buyer was obligated to pay the balance of the purchase price since the contract did not condition payment on the seller's performance).

As to whether a contract is entire or severable, under Tennessee law "there is no precise definition of when a contract is 'entire' or when it is 'severable.'" James Cable Partners, L.P. v. City of Jamestown, 818 S.W.2d 338, 344 (Tenn. Ct. App. 1991), cert. denied, 502 U.S. 1032 (1992). In distinguishing these two classes of contracts, the Tennessee Court of Appeals stated:

11

> Where a contract is severable or divisible, breaches of its severable parts will give rise to separate causes of action accruing at different times, ..." *Brockett v. Pipkin,* 25 Tenn.App. 1, 8, 149 S.W.2d 478, 482 (1941) (quoting 37 C.J. *Limitations of Actions* § 216 (1925)). Under these circumstances, the statute of limitation will begin to run at the time of each breach. *Id.* On the other hand, "if a continuing contract is entire, an action can be maintained on it only when a breach occurs or the contract is in some way terminated, and the statute begins to run from that time only." 54 C.J.S. *Limitations of Actions,* § 154 (1987).
>
> ... A contract is severable "where each part is so independent of each other as to form a separate contract." *Id.* A contract is entire when the "promises of both parties are interdependent and relate to the same subject matter." *Id.*

Greene v. THGC, Inc., 915 S.W.2d 809, 811 (Tenn. Ct. App. 1995).

"The primary test for determining the character of the contract is to ascertain the intentions of the parties." Moulds v. James F. Proctor, D.D.S., 1991 WL 137577, *10 (Tenn. Ct. App. July 29, 1991) (citing 17A Am.Jur. Contracts § 415 (1991)). In Collins v. Summers Hardware and Supply Co., the Tennessee Court of Appeals found that the plaintiffs' contract for monthly payments based on a percentage of the sales price and cost of goods was severable because the contract did not provide for a specific amount to be paid. 88 S.W.3d 192, 201 (Tenn. Ct. App. 2002).

Here, the Defendants purchased certain assets from Plaintiff for $1,100,000. Under the APA, Defendants were required to pay $600,000 within ninety days from the date of closing and, thereafter, make quarterly payments equal to 2% of gross sales of screeds, screed bars, saddle clamps, concrete bomb, and other screed related products sold by Plaintiff until Plaintiff was paid the remaining balance of $500,000. As the parties' promises under the APA were interdependent and related to the same subject matter and given that the parties' intent was for the outstanding $500,000 to be paid in quarterly payments equal to 2% of gross sales, the Court concludes that the APA constitutes an "entire" contract. Thus, the proper measure of damages is

the $500,000 balance owed under the APA. See Jamison v. Jamison Pest Control Co., 852 S.W.2d 884, 885-86 (Tenn. Ct. App. 1992) ("When there is a total breach, plaintiff may recover for the value of that part of the performance which was due at the time of trial and also recover for the value of that part of the performance which is to come due after the trial." (citation omitted)).

Defendants argue that Plaintiff is not entitled to recover the entire remaining purchase price because they were not required to continue to manufacture or sell the assets.

> [T]here is an implied undertaking in every contract on the part of each party that he will not intentionally or purposely do anything ... which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Ordinarily if one exacts a promise from another to perform an act, the law implies a counterpromise against arbitrary or unreasonable conduct on the part of the promisee. However, essential terms of a contract on which the minds of the parties have not met cannot be supplied by the implication of good faith and fair dealing.

Winfree v. Educators Credit Union, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995) (citing 17 Am. Jur. 2d Contract § 256). From the Court's reading of the APA, the parties contemplated that Defendants would satisfy the remaining $500,000 owed by selling the assets purchased from Plaintiff and paying Plaintiff a percentage of the gross sales. To hold that Defendants could have ceased manufacturing or selling the assets would circumvent the parties' intention that Defendants pay a total of $1,100,000.

In addition to $500,000, Plaintiff seeks prejudgment interest under Tenn. Code Ann. § 47-14-103. Defendants did not respond to Plaintiff's claims for prejudgment interest. Given Plaintiff's proof that the Defendant owed Plaintiff $500,000, the Court concludes that prejudgment interest should be awarded at a rate of ten percent per annum from October 2008 until paid to give Plaintiff the full benefit of the bargain.

Accordingly, for these reasons the Court concludes that Defendants' motion for summary judgment (Docket Entry No. 40) should be granted; however, the appropriate measure of damages is the $500,000 balance remaining under the APA and an award of prejudgment interest.

An appropriate Order is filed herewith.

**ENTERED** this the ___ day of May, 2012.

WILLIAM J. HAYNES, JR.
United States District Judge